IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:19-cv-00172-DDD-NYW

HOLLY MACINTYRE,

    Plaintiff,

v.

JP MORGAN CHASE BANK, N.A.

    Defendant.

---

## ORDER OF DISMISSAL

---

    This case alleges that Defendant JP Morgan Chase Bank, N.A. (Chase) falsified signatures and indorsements on a promissory note, thereby permitting it to fraudulently obtain a judgment in Colorado state court authorizing a foreclosure sale of Ms. MacIntyre's property. Chase moves to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. (Doc. 12.) In addition to responding, Ms. MacIntyre moves to strike Chase's motion because it was filed before service of the Complaint. (Doc. 20.) Because this case seeks to reopen a matter that was decided by a final decision of a Colorado state court, the Court has no jurisdiction to resolve it. Therefore, the case is **DISMISSED WITH PREJUDICE**.

I.  BACKGROUND

Unless specifically noted, the following allegations are drawn from the Complaint (Doc. #1) and are taken as true. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013).

Holly MacIntyre was the owner of real residential property in Jefferson County, Colorado. On January 10, 2003, she executed a $100,000 promissory note made payable to Broker One Lending and secured by a deed of trust on the property. On December 16, 2014, Chase—claiming to be the holder of the note—sought a judgment permitting it to conduct a foreclosure sale of the property. During the trial in state court, Chase knowingly produced a different, "forged and falsified" note bearing a "simulated handwritten indorsement apparently made by Broker One Lending to Flagstar Bank" and "simulated ink-stamped indorsement in blank, apparently made by Flagstar Bank, but not actually made by Flagstar Bank." At the state trial, "Chase disputed every allegation that MacIntyre made there about the falsification of the false notes and the signatures." After weighing the evidence, the "state court concluded that Chase is the 'holder' of the purported 'note' and issued a judgment of judicial foreclosure against MacIntyre."

Ms. MacIntyre appealed to the Colorado Court of Appeals and filed three motions to stay execution of the foreclosure judgment. Chase's attorneys obtained denials of all three motions to stay by "using fraudulent misrepresentations of fact and law." On January 21, 2016, the property was sold at a sheriff's sale. On April 28, 2016, the Colorado Court of Appeals affirmed the foreclosure judgment. Ms.

MacIntyre sought certiorari review in the Colorado Supreme Court, but she later filed a "suggestion of mootness and motion to dismiss as moot," and the high court dismissed on mootness grounds on January 3, 2017.

On January 18, 2019, proceeding pro se, Ms. MacIntyre filed this case alleging that "Chase's fraud in the foreclosure proceeding has caused [her] extraordinary financial damage by the irreversible loss of her primary residence. . . . Chase's foreclosure fraud was solidified by the fraudulent tactics it used in thwarting the indispensable stay she needed to have any possibility of reversing the foreclosure judgment on appeal." In the Complaint, she argued that the "mootness of her appeals" entitles her to have her foreclosure judgment vacated—a theory she alleged she would test with forthcoming appellate filings.

Counsel for Chase appeared on February 7 and waived service on behalf of Chase. On February 28, Chase filed a motion to dismiss for lack of subject-matter jurisdiction under either the *Rooker-Feldman* or *Younger* doctrines. Chase further submits that the Complaint fails to state a claim because Ms. MacIntyre is estopped from relitigating certain issues, she filed more than a year beyond the applicable statute of limitations period, and she is unable to plead the necessary fraud element of reliance.

On March 28, Ms. MacIntyre filed a "motion to vacate judgment as moot" in the Colorado Court of Appeals. (Doc. 19-1.) On April 11, the Court of Appeals ordered: "Appellant's motion to vacate the judgment as moot is denied. Case was

mandated on January 4, 2017. No further motion to vacate will be considered." (Doc. 22-1, at 2.)

On April 5, Ms. MacIntyre served Chase with the Complaint. On April 9, she moved to strike the motion to dismiss as premature solely because it was filed before service of the Complaint. She further responded to the motion to dismiss by singularly addressing Chase's invocation of collateral estoppel. The Court considers the parties' motions together.

## II. ANALYSIS

Courts must hold pro se litigants' pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Because Ms. MacIntyre is pro se, the Court reads the Complaint broadly for facts that could be sufficient to state a valid claim, *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991), or which might "evince[] a basis for the court's subject-matter jurisdiction." *Kucera v. Cent. Intelligence Agency*, 754 F. App'x 735, 736 (10th Cir. 2018). At the same time, where the Court's subject-matter jurisdiction is in question, the Court is not constrained to accept a complaint's allegations as true. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). And here, Ms. MacIntyre supplied the Court with her unsuccessful post-Complaint appellate filings, which may bear on the jurisdictional question.

The Court's principle concern is whether it has the power to hear this case. Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," and

4

thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction "at any stage in the litigation." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 501 (2006). Therefore, if Chase is correct that the Court does not have jurisdiction, whether its motion to dismiss should be stricken is immaterial considering the Court's ongoing obligation to evaluate its own jurisdiction. The *Rooker-Feldman* and *Younger* doctrines raised by Chase both implicate the Court's subject-matter jurisdiction. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005); *Chapman v. Oklahoma*, 472 F.3d 747, 748 (10th Cir. 2006).

*Rooker-Feldman* takes its name from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker*, plaintiffs previously defeated in state court filed suit in a federal district court alleging that the adverse state court judgment was unconstitutional and asking that it be declared "null and void." 263 U.S. at 414–15. The Supreme Court stated that even if the state court was wrong, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding," and such was not the province of the federal district courts. *Id.* at 415–16. In *Feldman*, the Supreme Court similarly concluded that a federal district court lacked subject-matter jurisdiction over what would have been essentially a review of allegations "inextricably intertwined" with judicial determinations made by the District of Columbia's highest court. 460 U.S. at 485–86.

Citing the habit of district courts to expand the scope of the *Rooker* and *Feldman* decisions, the Supreme Court in *Exxon* considered whether the doctrine precluded a federal court from hearing a case brought only weeks after a parallel case was filed in state court and well before any judgment in the state court. 544 U.S. at 281. There, the Court held that the "*Rooker-Feldman* doctrine is confined to cases of the kind from which it acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 281. Thus, *Exxon* clarified that "*Rooker-Feldman* is not triggered simply by the entry of judgment in state court" but only "after state proceedings have ended." *Id.* at 292. The Tenth Circuit has read *Exxon* to mean that a state court action is not final for *Rooker-Feldman* purposes until a party's final chance to appeal has passed. *Guttman v. Khalsa*, 446 F.3d 1027, 1031 (10th Cir. 2006) ("In this case, Guttman filed his federal suit while his petition for certiorari to the New Mexico Supreme Court was pending. His state suit was not final. As such, the *Rooker-Feldman* doctrine does not bar his federal suit and the district court does have subject matter jurisdiction to hear the case."); *Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) ("Mr. Chapman's state court proceedings have not reached the end of the state courts' appeal process, and the district court therefore erred by dismissing his complaint under *Rooker-Feldman*.").

Even when appeals remain in a state case, however, "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." *Exxon Mobil Corp.*, 544 U.S. at 292. One such abstention doctrine is the product of *Younger v. Harris*, 401 U.S. 37 (1971), which provides principles for determining when it is appropriate for a federal court to abstain for interfering with a state judicial proceeding. *Seneca-Cayuga Tribe of Okla. v. State of Okl. ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989). Abstention is appropriate when (1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution, or implicate separately articulated state policies. *Chapman*, 472 F.3d at 749.

Finally, when parallel cases are waged in state and federal court, "disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." *Exxon Mobil Corp.*, 544 U.S. at 293. Most relevant here, the principle of collateral estoppel prevents re-litigation of issues that have been previously decided on the merits against a party that had a full and fair opportunity to litigate them in the prior proceeding. *See Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1022 (10th Cir. 2001). However, "[p]reclusion, of course, is not a jurisdictional matter. . . . In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but

7

federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court." *Id.* Therefore, to dismiss under the doctrine of collateral estoppel, the Court must be confident of its subject-matter jurisdiction.

Here, the face of the Complaint makes clear that Ms. MacIntyre's case cannot continue in federal court. She argued the very same fraud she complains of here before the state court, which considered it, rejected it, and entered judgment affirming the validity of the note and permitting Chase to execute upon it. Ms. MacIntyre appealed, and the Court of Appeals ultimately affirmed and issued a mandate on January 4, 2017. The Colorado Supreme Court, at Ms. MacIntyre's request, dismissed her petition for review and the lower state court decision became final. Even so, in the January 2019 Complaint, Ms. MacIntyre pleaded her then-future intent to advance another state appeal, and the documents subsequently filed in this case show that she did, in fact, do so (though she was ultimately unsuccessful). Her principle opposition to Chase's motion to dismiss rests on the grounds that this second appeal might result in vacatur of the state court judgment. So, the question becomes whether this case is best viewed as inviting appellate review of a final state court decision, requiring abstention from an ongoing civil proceeding, or being sufficiently parallel (at least upon filing) to the state court matter such that any decision that became final in state court could only have preclusive effect through estoppel.

The Court has a responsibility to read the Complaint broadly and has made every effort to reconcile Ms. MacIntyre's purported insistence on a continued right

8

to appeal with the deadlines governing such processes. But the most recent decision of the Colorado Court of Appeals—entered April 11, 2019 and which disposed of this second appeal—is unequivocal that her "[c]ase was mandated on January 4, 2017. No further motion to vacate will be considered." Even though the Court must afford pro se parties the benefits of certain doubts, it cannot go so far as to imply a right to further appeal more than two years after a final mandate has been issued and certainly cannot comment on the propriety of decisions that were finally litigated in state court. Whatever Ms. MacIntyre's most recent filings in state court might be called, they are not "an appropriate and timely appellate proceeding" — that is something she had already undertaken, though without success. *See Rooker*, 263 U.S. at 415–16. Had some legitimate ongoing appeal been pending at the time she filed the Complaint, the Court might have had occasion to address abstention under *Younger*. But under these circumstances, where the Complaint asks the Court to effectively review state court proceedings after the timely and appropriate appellate process in state court has been completed, *Rooker-Feldman* holds that the Court has no jurisdiction over the matter. And because it lacks subject-matter jurisdiction, the Court cannot address the merits of any part of this case.

## III. CONCLUSION

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that this case is **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction. All other pending motions are **DENIED AS MOOT**. The Clerk is instructed to close this case.

Dated: June 28, 2019

**BY THE COURT:**

/s/*Daniel D. Domenico*
Hon. Daniel D. Domenico
United States District Judge